IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 26, 2006

## DEWAYNE R. CROSS. v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Blount County**
**No. C-15112    D. Kelly Thomas, Jr., Judge**

---

**No. E2006-00375-CCA-R3-PC - Filed September 20, 2006**

---

The Petitioner, Dewayne R. Cross, was convicted of rape, and the trial court sentenced him as a violent offender to nine years in the Tennessee Department of Correction.  He appealed, this Court affirmed the conviction, and the Petitioner filed a petition and two amended petitions for post-conviction relief.  Following a hearing, the trial court dismissed the petitions.  The Petitioner now appeals, contending that the post-conviction court erred when it found that the Petitioner received the effective assistance of counsel.  Finding no reversible error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID G. HAYES and J.C. MCLIN JJ., joined.

Mike A. Hickman, Maryville, Tennessee, for the appellant, Dewayne R. Cross

Paul G. Summers, Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Michael L. Flynn, District Attorney General; Rocky H.Young, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I.  Facts
### A.  Facts on Direct Appeal

As set forth in this Court's opinion on direct appeal, the proof at the Petitioner's trial established the following facts:

On May 30, 1997, the sixteen-year-old victim attended a party at the home of a Maryville High School friend.  Sometime that night, the defendant and approximately six other men arrived at the party.  After a dispute among party-goers over missing compact discs, the victim went outside the house and sat in a lawn chair.

While she was sitting alone outside, the defendant approached her. The defendant told the victim his name was Arthur. He put his arm around her and led her to the side of the house. The victim testified that when she asked the defendant what he was doing, he told her to be quiet or he would hurt her. The victim testified she was frightened and believed the defendant would hurt her if she called for help.

At the side of the house, the defendant forced the victim to the ground, removed her clothing, and raped her. The victim estimated that the rape lasted five to ten minutes. She stated she was crying and in a great deal of pain.

When the defendant left, the victim pulled her clothes back on and noticed blood on her underwear. She returned to the house where she saw Julia Williams. Williams testified that the victim told her she had been raped. Williams stated the victim was crying and her hair was disheveled. Sarah Kelso said the victim told her she had been raped and was bleeding. Kelso testified the victim was crying and looked disheveled.

Andrea Dawn Maynor, a Maryville police officer, came to the house at approximately 11:00 that evening in response to a call about a shooting. Maynor described the victim's condition:

> Q. And what did you notice when you did so, if anything?
> A. She was shaking. She was very, very upset. She was able to speak when questions were asked to her. Even when I touched her arm in a way to comfort and reassure her, her whole body was just in a very jerking, shaking motion. She was just extremely traumatized.
> Q. And what, if anything, did she say had happened?
> A. She said, "He raped me."
> Q. Did she say who it was?
> A. She-her statement was, "He raped me."

The victim was transported to the East Tennessee Children's Hospital where Dr. Ronald Ford, an expert in the area of sexual trauma in children and young adults, examined her. Dr. Ford testified regarding the trauma he observed to the victim's vaginal area. Dr. Ford believed the trauma was caused by "forced penetration" and that it was "very unlikely in consensual sex to have that severe an injury." The victim identified the defendant in a photographic lineup. A few days after the rape, the defendant was arrested for murder. An interview was conducted and recorded on videotape. In the interview, the defendant admitted to having sex with the victim. An edited version of this interview was played for the jury.

After due deliberation, the jury found the defendant guilty of rape.

State v. Dewayne R. Cross, No. 03C01-9902-CC-00053, 2000 WL 134919, at \*1-2 (Tenn. Crim. App., at Knoxville, Feb. 7, 2000), *no Tenn. R. App. P. 11 application filed.* In that opinion on direct appeal, this Court affirmed the Petitioner's conviction and sentence.

### B. Facts from Post-Conviction Proceedings

At the hearing on the Petitioner's petition, as amended, for post-conviction relief, the following evidence was presented: The Petitioner testified that the tape recording of the preliminary hearing was lost, and, at the preliminary hearing, the victim said that there was no coercion or force used against her in the commission of the alleged rape. The Petitioner said that, at trial, the victim testified differently and said that the Petitioner grabbed her, took her around the house, threw her down, took off her clothes, and had intercourse with her. She also said that the Petitioner told her that he would harm her if she yelled and that she was scared. The Petitioner said that the victim did not make such accusations when she testified at the preliminary hearing. Further, he testified that his trial counsel ("Counsel") did not raise the issue of the lack of the preliminary hearing tape on appeal.

On cross-examination, the Petitioner acknowledged that, at trial, Officer Andrea Maynor testified that, on the night of the alleged offense, the victim seemed very traumatized and told the officer that she had been raped. He also acknowledged that the victim testified that the Petitioner told the victim to be quiet or else he would hurt her. The Petitioner recalled that Dr. Ford testified at trial that, in his opinion, the victim's physical trauma was caused by forced penetration, and it was very unlikely that the intercourse was a consensual act. The Petitioner testified that he did not have intercourse with the victim, but he acknowledged that he told the police in his statement that he had intercourse with the victim. He recalled that Julia Williams and Sarah Kelso both testified that the victim said that she had been raped, and she was crying and looked disheveled. The Petitioner also recalled that Sarah Kelso testified that the victim was bleeding. When asked what evidence was presented that allowed the trial court to bind his case over to the Grand Jury, the Petitioner testified that hearsay evidence was presented and that he admitted to having consensual intercourse with the victim.

### II. Analysis

On appeal the Petitioner contends that the post-conviction court erred when it found that the Petitioner's conviction was not the result of ineffective assistance of counsel. The Petitioner contends that Counsel should have used a tape of his preliminary hearing to attack the victim's credibility and impeach her regarding whether she was coerced into having intercourse with him. He argues that the victim's testimony at the preliminary hearing was inconsistent with her testimony at trial and that Counsel failed to discredit the victim at trial. He further contends that Counsel was deficient for failing to request a dismissal of the indictment or ask that it be remanded for another preliminary hearing. The post-conviction court stated that:

If the other proof from the State were weak, then I would say it's an error of such magnitude that . . . it taints the whole trial and the case should be dismissed. But here the State's evidence was strong from the medical standpoint with the medical professional, from the victim's testimony, the physical evidence, the corroborating evidence from other people at the party. All of those things.

And true, it would have helped [the Petitioner] if he had conflicting testimony from that lady from the preliminary hearing. But, now, she has testified. And to grant a new trial and remand it for [a] preliminary hearing, she is not going to go to a preliminary hearing and say, "I consented," now. And the only proof that she said that to begin with is from [the Petitioner]. And [the Petitioner's] credibility is not high enough with me to carry the day on that point, in light of him taking the stand and denying the things that he said in his statement back at the time to the officers. I [think] that what he told the officers was factual . . . .

For those reasons, in some instances I don't think Counsel's performance was deficient and for other reasons, I think it was. And then the reasons where I think it was, I think in light of the strength of the State's case and the realities of the situation presently that it would have made no difference in the outcome . . . .

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103 (2003). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003).

Once the post-conviction court has ruled upon a petition, its findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. Wallace v. State, 121 S.W.3d 652, 656 (Tenn. 2003); State v. Nichols, 90 S.W.3d 576, 586 (Tenn. 2002) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). This Court may not reweigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Nichols, 90 S.W.3d at 586. Questions concerning the credibility of witnesses and the weight to be given their testimony are for resolution by the post-conviction court. Id. (citing Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997)). Notwithstanding, determinations of whether counsel provided a defendant constitutionally effective assistance present mixed questions of law and fact. Wallace, 121 S.W.3d at 656; Nichols, 90 S.W.3d at 586. As such, our review is de novo, and we accord the conclusions reached below no presumption of correctness. Wallace, 121 S.W.3d at 656; Nichols, 90 S.W.3d at 586.

The Sixth Amendment provides, in pertinent part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This right to counsel is "so fundamental and essential to a fair trial, and so, to due process of law, that it is made obligatory upon the States by the Fourteenth Amendment." Gideon v. Wainwright, 372 U.S. 335, 340 (1963) (quoting Betts v. Brady, 316 U.S. 455, 465 (1942)). Inherent in the right to counsel is the right to effective assistance of counsel. Cuyler v. Sullivan, 446

U.S. 335, 344 (1980); McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970); see also Strickland v. Washington, 466 U.S. 668, 686 (1984).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686; Combs v. Coyle, 205 F.3d 269, 277 (6th Cir. 2000). A two-prong test directs a court's evaluation of a claim of ineffectiveness:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687. The Strickland standard applies, as well, to the right to counsel under article I, section 9 of the Tennessee Constitution. See State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The performance prong of the Strickland test requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness, or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690; see also Kimmelman v. Morrison, 477 U.S. 365, 386 (1986). Judicial scrutiny of counsel's performance must be highly deferential. Porterfield v. State, 897 S.W.2d 672, 677 (Tenn. 1995). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Id. Upon reviewing claims of ineffective assistance of counsel, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689. Additionally, courts should defer to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Finally, we note that criminal defendants are not entitled to perfect representation, only constitutionally adequate representation. Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" Burger v. Kemp, 483 U.S. 776, 794 (1987).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In evaluating whether a petitioner satisfies

the prejudice prong, this Court must ask "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (citing Strickland, 466 U.S. at 687). In other words, a petitioner must establish that the deficiency of counsel was of such a degree that it deprived the defendant of a fair trial and called into question the reliability of the outcome. Nichols, 90 S.W.3d at 587. To establish prejudice, the evidence stemming from failure to prepare a sound defense or present witnesses must be significant, but it does not necessarily follow that the trial should have otherwise resulted in an acquittal. Brimmer v. State, 29 S.W.3d 497, 508 (Tenn. Crim. App. 1998). "A reasonable probability of being found guilty of a lesser charge, or a shorter sentence, satisfies the second prong in Strickland." State v. Zimmerman, 823 S.W.2d 220, 225 (Tenn. Crim. App. 1991).

In the case under submission, the evidence does not preponderate against the findings of the post-conviction court. Tennessee Rules of Criminal Procedure 5.1(a) provides that at a preliminary hearing, "proceedings shall be preserved by electronic recording or its equivalent and when the defendant is subsequently indicted such recording shall be made available for listening to by the defendant or defendant's counsel to the end that they may be apprised of the evidence introduced upon the preliminary examination." From the record in this case we are unable to determine what happened to the tape of the Petitioner's preliminary hearing in this case. The proper remedy when an electronic recording of a preliminary hearing is lost or unavailable would be to request the trial court to dismiss the indictment and remand to the General Sessions Court for a second preliminary hearing. See State v. Carter, 970 S.W.2d 509, 512 (Tenn. Crim. App. 1997). No such request was made in this case. However, the record reflects that, at the hearing on the motion for new trial, Counsel pointed out inconsistencies between the victim's trial testimony and her testimony at the preliminary hearing. Furthermore, the Petitioner has failed to present any evidence, other than his own testimony, regarding what transpired at the preliminary hearing. The Petitioner's contention that at the preliminary hearing the victim testified that she consented to have intercourse with the Petitioner is unsupported by the facts of the case. The purpose of a preliminary hearing is to determine whether sufficient probable cause exists to believe that the Petitioner has committed a crime. See Tenn. R. Crim. 5.1(a). As the prosecution pointed out at the post-conviction hearing, the Grand Jury indicted the Petitioner on the basis of the testimony at the preliminary hearing. Had the victim testified that she consented to have intercourse with the Petitioner, the case could not have been bound over to the Grand Jury.

Even if counsel was deficient for not filing a motion to remand the case for a second preliminary hearing, based on the overwhelming evidence, there was no resulting prejudice. The State presented sufficient evidence at trial to support the Petitioner's conviction. The Petitioner acknowledged that, at trial, Officer Andrea Mayor testified that, on the night of the alleged rape, the victim was emotionally upset, crying, and shaking. Maynor also testified that the victim said the Petitioner raped her and that it "hurt very bad." He also acknowledged that Dr. Ron Ford testified that the victim's physical trauma was caused by forced penetration and that it was unlikely that it was caused by consensual sex. The Petitioner also admitted that, at trial, two other witnesses testified that when the victim returned to the party she was crying, her hair was disheveled, and she stated that she had been raped. Due to the overwhelming evidence supporting the Petitioner's conviction, we

can find nothing in the record which indicates that the Petitioner was prejudiced by the lack of an electronic recording of his preliminary hearing. We note that if prejudice is not shown, we need not seek to determine the validity of the allegations about deficient performance. Strickland, 466 U.S. at 697. Therefore, the Petitioner is not entitled to relief on this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we conclude that there exists no reversible error in the judgment of the post-conviction court. Accordingly, we affirm the post-conviction court's dismissal of the Petitioner's petition for post-conviction relief.

_____
ROBERT W. WEDEMEYER, JUDGE